UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X

UNITED STATES OF AMERICA,

- against -

RAYMOND CASTILLO,

                    Defendant.
-----------------------------------------X

04 Cr. 424-018 (RWS)

SENTENCING OPINION

**Sweet, D.J.,**

On May 13, 2005, Defendant Raymond Castillo ("Castillo") was found guilty after a jury trial of conspiracy in violation of 21 U.S.C. § 846 to distribute and possess with intent to distribute one kilogram and more of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A). For the reasons set forth below, Castillo will be sentenced to 120 months' imprisonment and a five-year term of supervised release. A special assessment of $100 is mandatory and is due immediately.

**Prior Proceedings**

On May 6, 2004, the government filed a sealed indictment against Castillo and his co-defendants, charging them with a single count of conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin. The indictment was

1

unsealed on May 11, 2004, and Castillo was arrested the same day. Trial against Castillo and his co-defendant Oscar Caesar began on May 9, 2005. A guilty verdict against both defendants was returned on May 12, 2005. Castillo is scheduled for sentencing on November 28, 2006.

## The Sentencing Framework

In accordance with the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005), and the Second Circuit's decision in <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission (the "Sentencing Commission"). Thus, the sentence to be imposed here is the result of a consideration of:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed --
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and

2

    (D)  to   provide   the   defendant   with needed
         educational  or  vocational  training,  medical
         care, or other correctional treatment in the
         most effective manner;

(3)  the kinds of sentences available;

(4)  the  kinds  of  sentence  and  the  sentencing  range
     established for --

    (A)  the applicable category of offense committed
         by the applicable category of defendant as set
         forth in the guidelines ...;

(5)  any pertinent policy statement ... [issued by the
     Sentencing Commission];

(6)  the  need to avoid unwarranted sentence disparities
     among defendants with similar records who have been
     found guilty of similar conduct; and

(7)  the need to provide restitution to any victims of
     the offense.

18 U.S.C. § 3553(a).  A sentencing judge is permitted to find all

the facts appropriate for determining a sentence, whether that

sentence is a so-called Guidelines sentence or not.  See Crosby,

397 F.3d at 114-15.


**The Defendant**


          Castillo was born in the Bronx, New York on December 27,

1978.  He is the only child born of the relationship between his

parents, but has three maternal half-sisters.  Castillo's father

was not present during his childhood.  He and his sisters were

removed from their mother's care by the Bureau of Child Welfare

when  Castillo  was  nine,  because  relatives  had  reported  to

                                3

authorities that their mother was addicted to crack cocaine and was not taking care of the children.  Castillo and his half-sisters then lived with an aunt, but the defendant reported that he did not feel she treated them well.

Castillo left his aunt's home at age thirteen to live with friends.  He was subsequently arrested and placed in a youth facility, then spent the years between ages fifteen and twenty living in various group homes.  Upon his release, he went back to living with friends.  He reported that he was unable to live with his mother because she continued to use drugs.

Castillo's mother passed away in January 2005.  His father reportedly lives in Puerto Rico, but the defendant has had no contact with him for the last twelve years.

The defendant has never been married, but has a five-year-old son from a relationship that has lasted approximately seven years.

Castillo has a lengthy history of drug use.  At age thirteen, he began smoking marijuana, and also tried cocaine and PCP.  At age twenty-three, he started using heroin, and used the drug nearly daily for the next several years until he voluntarily entered a treatment program in February 2004.

4

The defendant has not completed the requirements for a high school diploma, and has not yet earned a GED. Prior to his arrest, Castillo worked for a button manufacturing company and as a messenger, earning up to $280 a week. He reports no significant assets or liabilities.

## The Offense Conduct

The indictment filed in this action charges that from at least 1999 through May 2004, Castillo, along with his nineteen co-defendants and others, was a member of a criminal organization in the Bronx that controlled a three-block strip of Daly Avenue between East 179th Street and Bronx Park South (the "Organization"). According to the indictment, the Organization sold heroin all day and late into the night during the period identified in the indictment, conducting tens of thousands of hand-to-hand heroin transactions. The Organization operated out of several buildings, including 2105 Daly Avenue and 2114 Daly Avenue.

Green was a "worker" or "pitcher" for the Organization. Workers or pitchers for the Organization would be provided heroin on consignment by managers in the Organization, and would then sell the heroin to customers, paying the managers for the heroin as they were able to sell it. Workers and pitchers also acted as "steerers," directing customers on Daly Avenue to other workers or to managers to complete sales of heroin.

5

Based on trial testimony before the Court, the Organization sold an average of twenty-five bundles of heroin a day, which amounts to approximately half a kilogram per month, although the actual amount could vary from month to month.[1]  With respect to Castillo specifically, the Court finds that he should be held accountable for conspiring to distribute between three and ten kilograms of heroin during his demonstrated involvement with the conspiracy between May 13, 2003, and May 11, 2004.

---

[1]  Although the government asserts that the Organization sold "as much as fifty bundles of heroin a day," which is the equivalent of 500 glassines of heroin a day, the Court finds an average daily distribution of twenty-five bundles.  The trial testimony of one cooperating witness, who is a former member of the Organization, reveals that the sale of forty to fifty bundles was the "biggest number of bundles [the witness could] ever remember selling in one day."  (Castillo Trial Tr. at 137) (emphasis added).  That same witness a few moments later then said, in response to further questioning by the government, that "the most bundles is like probably eighty to a hundred." (Castillo Trial Tr. at 137.)

However, a different cooperating witness testified on direct examination that "on an average day" he would be able to sell "anywhere from a couple of bundles, like two bundles, three bundles, all the way up to thirty bundles."  (Castillo Trial Tr. at 387.)  On a slow day he would sell "anywhere from five bundles or less," and on a "really busy day, anywhere like up to eighty bundles."  (Castillo Trial Tr. at 388.)  However, he then testified that this latter number was not based on his own experience -- but rather gleaned "from talk because you just like hear the guys either complaining about how little drug money they made or they could be boasting about how much drugs they sold that day."  (Castillo Trial Tr. at 388) (emphasis added).

The Organization operated in three shifts, with two people -- a manager and a pitcher -- working each shift.  The pitcher conducted most of the sales, while the manager may have sold if the opportunity arose.  (Castillo Trial Tr. at 135.)  The Court considered both the structure of the Organization and the testimony presented regarding sales when determining the average daily distribution of heroin to attribute to the conspiracy.

6

## The Relevant Statutory Provisions

The statutory minimum term of imprisonment for the sole count of the indictment is ten years, and the maximum term is life, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. If a term of imprisonment is imposed, the Court shall impose a subsequent term of supervised release of at least five years pursuant to 21 U.S.C. § 841(b)(1)(A).

Castillo is not eligible for probation because the instant offense is a Class A felony and one for which probation has been expressly precluded by statute. 18 U.S.C. § 3561(a)(1)-(2), 21 U.S.C. § 841(b)(1)(A).

The statutory maximum fine is $4 million, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. A special assessment of $100 is mandatory. 18 U.S.C. § 3013.

Castillo may be declared ineligible for any or all Federal benefits for up to five years as determined by the Court pursuant to 21 U.S.C. § 862(b)(1)(B).

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, all offenders on probation, parole, or supervised release for offenses committed after September 13, 1994, are required to submit to one drug test within fifteen days of

7

commencement of probation, parole, or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).

## The Guidelines

The November 1, 2006 edition of the United States Sentencing Commission, Guidelines Manual ("U.S.S.G.") has been used in this case for calculation purposes, in accordance with U.S.S.G. § 1B1.11(a).

The guideline for a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 is found in U.S.S.G. § 2D1.1. The Court has determined that Castillo is responsible for distributing between three and ten kilograms of heroin. Pursuant to the Drug Quantity Table, the base offense level is 34. U.S.S.G. § 2D1.1(c)(3).

Castillo has six criminal history points for prior convictions. Because the instant offense was committed while the defendant was on probation for a prior conviction, two points are added. U.S.S.G. § 4A1.1(d). Further, because the instant offense was committed less than two years after release from imprisonment on a separate prior conviction, one additional criminal history point is added. U.S.S.G. § 4A1.1(e).

8

The total of the criminal history points is nine, which establishes a Criminal History Category of IV. Based on an offense level of 34 and a Criminal History Category of IV, the Guidelines range for imprisonment is 210 to 262 months.

The authorized term for supervised release under the guidelines is five years, pursuant to U.S.S.G. § 5D1.2(c).

Castillo is not eligible for probation because the instant offense is a Class A felony, pursuant to U.S.S.G. § 5B1.1(b)(1), and one for which probation has been expressly precluded by statute, pursuant to U.S.S.G. § 5B1.1(b)(2).

The fine range for the instant offense under the guidelines is from $17,500 to $4 million, pursuant to U.S.S.G. §§ 5E1.2(c)(3)(A) and (c)(4). Subject to Castillo's ability to pay, the expected costs to the government of any imprisonment, probation, or supervised release shall be considered in imposing a fine, pursuant to U.S.S.G. § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $1,931.97 to be used for imprisonment, a monthly cost of $292.21 for supervision, and a monthly cost of $1,590.66 for community confinement.

Pursuant to U.S.S.G. § 5F1.6, eligibility for certain federal benefits may be denied to any defendant convicted of distribution or possession of a controlled substance.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guideline analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary" as is required in accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). In particular, section 3553(a)(1) asks that the sentence imposed consider both "the nature and circumstances of the offense and the history and characteristics of the defendant," while section 3553(a)(2)(A) demands that the penalty "provide just punishment for the offense" that simultaneously "afford[s] adequate deterrence to criminal conduct" as required by § 3553(a)(2)(B). In addition, section 3553(a)(6) highlights "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Like a number of his co-defendants, Castillo has a difficult personal history. He has had very little contact

10

of any kind with his father. He and his half-sisters were removed
from his mother's home when Castillo was nine, due to his mother's
crack addiction. Between the ages of thirteen and twenty, he lived
in a youth facility and a series of group homes. Castillo began
abusing drugs at an early age, and was addicted to heroin at the
time of the instant offense. He did not complete high school and
has not obtained his GED. As a longtime drug abuser with limited
job opportunities, it is perhaps unsurprising that Castillo
supported himself by selling drugs.

The Court also considers the sentences imposed for
Castillo's prior convictions in determining whether the Guidelines
sentence is greater than necessary to achieve the purposes of
sentencing set forth at 18 U.S.C. § 3553(a)(2). As the Second
Circuit noted in United States v. Mishoe, 241 F.3d 214 (2d Cir.
2001),

> Obviously, a major reason for imposing an especially long
> sentence upon those who have committed prior offenses is
> to achieve a deterrent effect that the prior punishments
> failed to achieve. That reason requires an appropriate
> relationship between the sentence for the current offense
> and the sentences, particularly the times served, for the
> prior offenses. If, for example, a defendant twice
> served five or six years and thereafter committed another
> serious offense, a current sentence might not have an
> adequate deterrent effect unless it was substantial,
> perhaps fifteen or twenty years. Conversely, if a
> defendant served no time or only a few months for the
> prior offenses, a sentence of even three or five years
> for the current offense might be expected to have the
> requisite deterrent effect. . . . In some circumstances,
> a large disparity in that relationship might indicate
> that the [Guidelines] sentence provides a deterrent
> effect . . . in excess of what is required in light of

11

the prior sentences and especially the time served on
those sentences . . . .

241 F.3d at 220 (discussing downward departure from Guidelines
sentence resulting from defendant's career criminal designation).

Here, Castillo is facing the mandatory minimum sentence
of 120 months, which is a substantial punishment. Despite having
a number of prior convictions, Castillo has never been sentenced to
a term of incarceration of more than a year. Since the age of
fifteen, Castillo has not been sentenced to a term of imprisonment
greater than ninety days. Under these circumstances, the mandatory
minimum sentence constitutes a term at least ten times greater than
those imposed for Castillo's prior offenses.

Finally, in considering the remaining sentencing factors
under 18 U.S.C. § 3553(a), the Court must take into account "the
need to avoid unwarranted sentence disparities among defendants
with similar records who have been found guilty of similar
conduct." 18 U.S.C. § 3553(a)(6). Since Booker, a growing number
of courts have "held that sentencing judges are `no longer
prohibited from considering the disparity between co-defendants in
fashioning a reasonable sentence.'" Ferrara v. United States, 372
F. Supp. 2d 108 (D. Mass. 2005) (quoting United States v. Hensley,
No. 2:04 CR 10081, 2005 WL 705241, at *2 (W.D. Va. Mar. 29, 2005));
see also United States v. McGee, 408 F.3d 966 (7th Cir. 2005);
Simon v. United States, 361 F. Supp. 2d 35, 49 (E.D.N.Y. 2005). A

12

number of Castillo's co-defendants with similar records have received sentences of 120 months. In consideration of the factors set forth in 18 U.S.C. § 3553(a), it is determined that a non-Guidelines sentence is appropriate.

**The Sentence**

For the instant offense, Castillo will be sentenced to 120 months' imprisonment, to be followed by a five-year term of supervised release. As Castillo has been detained without bail since his arrest, he is not a candidate for voluntary surrender pursuant to 18 U.S.C. § 3143(a)(2).

A special assessment fee of $100, payable to the United States, is mandatory and due immediately. Because Castillo lacks financial resources, and in consideration of the other factors set forth in 18 U.S.C. § 3572, no fine is imposed.

Castillo shall report to the nearest Probation Office within seventy-two hours of release from custody. It is recommended that he be supervised by the district of residence.

As mandatory conditions of supervised release, Castillo shall (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection

13

of DNA as directed by the probation officer. The mandatory drug testing condition is suspended due to imposition of a special condition requiring drug treatment and testing.

The standard conditions of supervision (1-13) shall be imposed, along with the following special conditions:

(1) Castillo will participate in a program approved by the United States Probation Office, which program may include testing to determine whether he has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse provider, as approved by the Probation Officer. Castillo will be required to contribute to the costs of services rendered, in an amount determined by the probation officer, based on ability to pay or availability of third-party payment.

(2) If not otherwise gainfully employed, the defendant shall participate in an educational or vocational program to enhance marketable job skills. If not previously completed, the defendant shall complete the requirements for a GED.

(3) Castillo also will submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

14

This sentence is subject to modification at the sentencing hearing scheduled for November 28, 2006.

It is so ordered.

New York, NY
November  20 , 2006

ROBERT W. SWEET
U.S.D.J.

15